UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 19-cr-10089-PBS |
| LIAM MACLEOD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Liam MacLeod ("MacLeod"), stands convicted of mailing threatening communications in violation of 18 U.S.C. § 876(c) and conveying false information related to purported biological weapons in violation of 18 U.S.C. § 1038(a)(1).  These convictions stem from a series of threatening letters and other mailings that MacLeod sent via the United States Mail to the Chief Executive Officer ("CEO") of an online dating website in late 2017.  Inside one mailing, MacLeod placed a loose white powder that spilled out of the envelope as it was opened.  In a note accompanying the envelope, MacLeod identified the powder as Anthrax, a potentially lethal biological agent.  In another mailing, MacLeod placed a piece of paper stained with a red substance that appeared to be blood.  In a letter postmarked the following day, MacLeod identified the substance as blood infected with the AIDS virus.  And in other subsequent mailings, MacLeod included pieces of paper smeared with a brown substance believed to be human feces.

For these crimes, the United States (the "government") recommends that MacLeod be sentenced to five months' imprisonment followed by two years of supervised release, including a condition of five months of community or home confinement.  This sentence, the government believes, appropriately balances the nature and circumstances of the offenses, the history and

characteristics of the defendant, the overall goals of sentencing, and the other factors set forth in 18 U.S.C. § 3553(a).

### MacLeod's Criminal Conduct

OkCupid.com ("OkCupid") is an online dating website owned by the Match Group, Inc. (the "Match Group"), which maintains its corporate headquarters in Dallas, Texas. Among other websites, the Match Group also owns and operates Match.com ("Match"), another popular online dating platform. In late August 2017, the defendant registered with Match and began using its online dating services. Within a week, he also began using OkCupid. By September 11, 2017, however, OkCupid suspended MacLeod's user privileges after MacLeod repeatedly violated OkCupid's terms of service. Thereafter, seemingly angered by OkCupid's decision to suspend his account privileges, MacLeod initiated a weeks-long campaign to harass and threaten OkCupid and its employees using the mail.

#### *Count One*

On September 12, 2017, the day after OkCupid suspended his account privileges, MacLeod sent via the U.S. Mail an envelope addressed to OkCupid's CEO in Dallas. Inside the envelope was a loose white powder and a single piece of paper on which MacLeod wrote the following:

> *Greetings from Beverly*
> *Ban me will ya*
> *Welcome to the wonderful world of ANTHRAX*
> *Expect a package within the next couple of days*
> *It won't be ticking but it should be interesting!*

*See* Exhibit 1. Anthrax, which can be found in powder form, is a "biological agent" within the meaning of Chapter 10 of Title 18 of the United States Code. Exposure to Anthrax either by touching it or through inhalation can cause a serious infection or even death in humans.

Two days later, on September 14, 2017, MacLeod sent via the U.S. Mail a second envelope addressed to OkCupid's CEO.  Inside the envelope was a single piece of paper on which MacLeod typed the following text:

> *Greetings from Beverly (North Shore)*
> *9/11-9/12*
>
> *How'd you like what I sent you?  Aww, go take a powder.  Oh, the things I have in store for you!  I can go on like this for years.  How long can you last?*
>
> *Incidentally, my father was an angel:  That's Hell's Angel to you.  You see, we have some pull.  Take for example your vehicles.  We now know who owns what, and where each of you parks his.  Hmm, think of the possibilities!*

*See* Exhibit 2.

### Count Two

Six days later, on September 20, 2017, MacLeod sent via the U.S. Mail a third envelope addressed to OkCupid's CEO.  Inside the envelope was a single piece of white paper stained with a red substance.  *See* Exhibit 3.  The paper contained no text.  The next day, MacLeod sent a fourth envelope addressed to OkCupid's CEO.  Inside the envelope was a single piece of paper on which MacLeod wrote the following text:

> *Greetings from Beverly (North Shore)*
> *(9/11-9/12)*
>
> *What a bloody mess huh.  A friend of mine just found out he has A.I.D.S.  Not H.I.V mind you, full blown A.I.D.S.  The son of a bitch tried to kill himself in my apartment.  He bled all over the place.*
>
> *You didn't by any chance touch the page did you?  Another friend of mine works in a lab.  They've been working on this stuff.  It's called ed435.  What ed does is it keeps cells alive.  My friend tells me that the cells on that page will stay alive and active for at*

> *least a week.  I certainly hope you didn't handle that*
> *page with your bare hands!*
>
> *You know I thought I wanted my privileges back.*
> *Now I'm not so sure.  I'm having way too much fun!*
> *You know, you've given me purpose! Thank you! I'll*
> *be in touch…SOON!  (Wait'll you see what I've got*
> *for you next!)*

*See* Exhibit 4.  AIDS is a virus and a "biological agent" within the meaning of Chapter 10 of Title

18 of the United States Code.

All four of these mailings were received, opened and retained by employees of the Match

Group at the company's corporate offices in Dallas.  Concerned by the threatening nature of the

mailings—and believing that the mailings may, in fact, contain hazardous materials—the Match

Group reported the mailings to the Federal Bureau of Investigation (FBI) in Dallas on September

28, 2017.  FBI agents responded to the Match Group's corporate headquarters as if the letters

contained hazardous materials.  The agents conducted on-site field screening of the four mailings

with negative results, and later transported the mailings to the Dallas County Health and Human

Services Laboratory (DCHSL) for additional testing.  The DCHSL subsequently confirmed that

the mailings did not contain active biological or chemical threat agents.

### *Other Mailings*

Between October 4, 2017 and December 21, 2017, MacLeod sent via the U.S. Postal

Service five additional envelopes addressed to OkCupid's CEO.  Each of these mailings contained

either harassing letters or pieces of paper smeared with a brown substance described by MacLeod

as feces.  For example, on October 4, 2017, MacLeod mailed a single piece of paper smeared with

a brown substance to OkCupid's CEO.  *See* Exhibit 5.  Two days later, MacLeod mailed a letter

to the CEO in which he wrote:

> *Greetings from Beverly (North Shore)*

*What a shitty week huh?!  I'm just getting warmed*
*up!  Wait'll you see what comes next!  I'm telling you.*
*I've got a whole theme park planned for you!  Are we*
*pumped or what?!  I'll be in touch, SOON!!*

*You can end this.*
*You know what you did.*
*You know when you did it.*
*You can undo it.*

*See* Exhibit 6.

## **Sentencing Recommendation**

### *The Sentencing Guidelines*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United

States Sentencing Guidelines ("U.S.S.G." or "Guidelines") were no longer mandatory.  However,

"[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines

should be the starting point and the initial benchmark" for determining the defendant's sentence.

*Gall v. United States*, 552 U.S. 38, 49 (2007).  While, "[i]n accord with 18 U.S.C. § 3553(a), the

Guidelines, formerly mandatory, now serve as one factor among several courts must consider in

determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it

remains the case that "the Commission fills an important institutional role: it has the capacity

courts lack to 'base its determinations on empirical data and national experience, guided by a

professional staff with appropriate expertise,'" *id.* at 109 (quoting *United States v. Pruitt*, 502 F.3d

1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).  The Supreme Court noted that "in the

ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough

approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at

109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).  Accordingly, the First Circuit has

explained:

> First, the court should calculate the [Guidelines Sentencing Range], including any appropriate departures. After calculating the GSR, the court should consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether a sentence outside the guidelines range is appropriate. Finally, the court must determine what sentence is appropriate and explain its reasoning. The court should select a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

*United States v. Smith*, 531 F.3d 109, 111 (1st Cir. 2008).

There is no plea agreement in this case.  However, the government agrees with the Guidelines calculation set forth in the Pre-sentence Investigation Report ("PSR").[1]  As the PSR describes, the applicable Guidelines provision for each count of the indictment is § 2A6.1(a)(1).[2] PSR ¶ 42.  According to that section, the base offense level is 12.  *Id.*  A two-point increase is appropriate here because MacLeod made more than two threats.  *Id.* at ¶ 43.  Pursuant to U.S.S.G. § 3E1.1, MacLeod's offense level is also decreased by two points due to his acceptance of responsibility.  The total offense level, therefore, is 12.  *Id.* at ¶ 49.  In Criminal History Category I, *id.* at  ¶¶ 54-55, this corresponds to a Guidelines Sentencing Range of 10 to 16 months in Zone C.

### The Section 3553(a) Factors

In addition to calculating the Sentencing Guidelines, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) in determining the particular sentence to be imposed.  *See Smith*, 531 F.3d at 111; *United States v. Dixon*, 449 F.3d 194, 205 (1st Cir. 2006) (noting that a

---

[1] Based on his response and objections to the PSR, it appears that the defendant also agrees with the Guidelines calculation contained in the PSR.

[2] According to U.S.S.G. § 3D1.2, all four offenses should be grouped because they involve the same victim and two or more acts connected by a common criminal objective, or constituting part of a common scheme or plan.  *See* PSR ¶ 41.

sentencing court need not consider each factor the same, or "address those factors, one by one, in some sort of rote incantation").  Considering all of the relevant factors, including the history and characteristics of the defendant as described in the PSR, the government submits that a sentence of five months imprisonment followed by two years of supervised release, including a condition of five months of community or home confinement, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

The seriousness of the defendant's crimes must not be understated.  Over a period of more than twelve weeks, the defendant harassed and threatened to cause harm to OkCupid's employees, including its CEO.  Egregiously, MacLeod mailed an envelope containing a loose white powder, along with the harrowing message, "Welcome to the wonderful world of ANTHRAX."  Had the powder *actually* contained Anthrax—indeed, it would have been reasonable for the recipient of the letter to assume that it did—it would have been capable of causing serious injury or even death. *See United States v. Keyser*, 704 F.3d 631, 639 (9th Cir. 2012) (noting that anthrax attacks in 2001 did, in fact, cause multiple deaths and illnesses throughout the United States).  Similarly, the defendant mailed what he claimed was blood infected with a harmful virus (AIDS), even going so far as to threaten that the virus was still "alive and active."  *See* Exhibit 4.  This type of conduct amounts to threats to engage in biological terrorism, plain and simple.  *See Keyser*, 704 F.3d at 635 (sending packets of sugar labeled "Anthrax" was "feign[ing] multiple acts of biological terrorism"); *United States v. Chappple*, 251 Fed. Appx. 553, 559 (10th Cir. 2007) (unpublished) (referring to an Anthrax hoax as "terror-related threats"); *United States v. Hale*, 762 F.3d 1214 (10th Cir. 2014) (referring to the act of sending a purported harmful virus through the mail as "terrorism").  The sentence proposed by the government reflects the seriousness of MacLeod's conduct, and it necessarily provides just punishment. 18 U.S.C. § 3553(a)(2)(A).  Importantly, the

government's recommendation, which includes a period of incarceration, is also necessary to deter

other individuals from committing similar crimes.  18 U.S.C. § 3553(a)(2)(B).

In addition to promoting general deterrence, the government's proposal will also avoid

unwarranted sentence disparities.  *See* 18 U.S.C. § 3553(a)(6).  Generally, individuals convicted

of engaging in Anthrax-related hoaxes are sentenced to periods of incarceration far exceeding the

government's recommendation here.  For example:

- In *Chapple*, the defendant mailed two manila envelopes containing a white powdery substance to a business in Muskogee, Oklahoma.  251 Fed. Appx. at 554. Believing that the powder may be a hazardous substance, the envelopes were turned over to the police who, through testing, discovered that the powder was non-hazardous.  *Id.* at 554-55.  Nonetheless, the defendant was charged with and convicted of two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c).  *Id.* at 555.  The court sentenced the defendant (who the Court determined fell within Criminal History Category IV) to 33 months' imprisonment. *Id.*

- In *United States v. Zavrel*, 284 F.3d 130, 132 (3d Cir. 2004), investigators discovered seventeen envelopes "containing loose cornstarch (but no written messages) [addressed] to the President of the United States, local public officials, school administrators and judges," in a mailbox outside a local post office.  The letters were traced to the defendant, Zarvel, and another person, both of whom were charged with conspiracy to mail threatening communications in violation of 18 U.S.C. §§ 371 and 876, aiding and abetting mailing threatening communications, and making a false statement to a federal officer.  *Id.*  The defendant was convicted at trial and sentenced to 30 months' imprisonment.  *Id.*

- In *United States v. Reynolds*, 381 F.3d 404, 405 (5th Cir. 2004), the defendant was involved in an ongoing dispute with his home mortgage provider.  During a phone call with the mortgage company, the defendant yelled into the phone, "I just dumped anthrax in your air conditioner."  *Id.*  The recipient of the threat immediately contacted the company's in-house security, which determined that the treat was not credible.  *Id.*  The defendant was subsequently arrested and charged with threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a.  *Id.*  He was convicted at trial and sentenced to 51 months in prison.  *Id.*

- In *United States v. Keyser*, 704 F.3d 631, 634 (9th Cir. 2012), the defendant mailed "hundreds of packets of powder labeled 'Anthrax'" in an effort to "drum up publicity for a self-published book on the dangers of anthrax."  In fact, the packets contained sugar.  *Id.*  Nonetheless, the defendant was charged with and convicted on two counts of mailing threatening communications in violation of 18 U.S.C.

§ 876(c) and three counts of communicating false information regarding biological weapons in violation of 18 U.S.C. § 1038(a).  He was sentenced to 51 months' imprisonment.

As these prior cases demonstrate, a sentence of incarceration is appropriate here. MacLeod's conduct is markedly similar to the defendant's conduct in *Chapple*, which resulted in a 33-month incarcerative sentence.  The other cases—*Zarvel*, *Reynolds* and *Keyser*—involved similar criminal conduct and resulted in similar sentences, thus providing further support for the government's recommendation.  Although these cases can surely be distinguished from MacLeod's case in one or more ways—the defendant in *Chapple*, for example, had a criminal record and was convicted at trial—the government's proposal more than accounts for these differences by recommending a fairly modest period of incarceration.  Such a sentence is necessary, the government submits, to avoid unwarranted sentence disparities.

## Conclusion

For all of the reasons set forth above and in the PSR, the United States respectfully requests that the court sentence defendant Liam MacLeod to a period of incarceration of five months followed by supervised release for two years, to include a condition of five months of community or home confinement.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Jason A. Casey*
       Jason A. Casey
       Assistant U.S. Attorney

Dated: October 7, 2019

## <u>CERTIFICATE OF SERVICE</u>

I, Jason A. Casey, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

/s/ *Jason A. Casey*
Jason A. Casey
Assistant U.S. Attorney