UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 19-cr-10089-PBS |
| | ) | |
| LIAM MACLEOD | ) | |

**DEFENDANT'S REDACTED SENTENCING MEMORANDUM**

In this sentencing, the Court must weigh the crime—admittedly a troubling one—alongside that substantial frailties afflicting Liam MacLeod.  As is detailed at great length in the presentence report, MacLeod suffers from a litany of physical and psychiatric ailments that have left him disabled for nearly his entire adult life.  In his isolation and desire for social contact, he joined an online dating service.  Far from finding companionship, his experience only served to remind him of his own loneliness.  Embittered, mentally disorganized, and often under the influence of alcohol, he lashed out.  In view of MacLeod's substantial medical needs, and because his conduct was the product of unique circumstances that are unlikely to recur provided he remains sober and compliant with psychiatric care, MacLeod requests that the Court impose a sentence of 3 years probation.[1]  Such a sentence would represent only a modest variance from the undisputed advisory guideline sentencing range of 10-16 months and is manifestly sufficient but not greater than necessary to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

---

[1] Should the Court determine that a more punitive sanction is necessary, MacLeod asks the Court to consider a period of home confinement in lieu of incarceration.  As is noted in the presentence report, MacLeod's advisory guideline sentencing range falls in Zone C.  However, MacLeod maintains that home confinement is unnecessary and impractical in view of his ongoing medical needs and present living situation.

## GUIDELINES ANALYSIS

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  MacLeod concurs with the PSR's application of the Sentencing Guidelines. The presentence report groups Counts 1-4 for guideline calculation purposes and assigns a base offense level of 12 under USSG §2A6.1(a)(1). Because the offense involved more than two threats, an addition two-level increase occurs. USSG §2A6.1(b)(2).  After accounting for acceptance of responsibility, the total offense level is 12.  MacLeod has a criminal history score of zero and falls in criminal history category I, yielding an advisory guideline sentencing range of 10-16 months (Zone C).

## MACLEOD'S PERSONAL HISTORY AND CHARACTERISTICS

Liam MacLeod's personal history has been shaped by trauma in his childhood and an array of psychiatric and medical conditions in his adulthood. ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████ .

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████

     █████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████

MacLeod's various ailments have been life-defining, rendering him unable to work for decades.  His only means of supporting himself consists of a modest monthly disability payment and food stamps.  For approximately twenty years, MacLeod lived in subsidized housing in Beverly.  Because he is largely estranged from his family, MacLeod's neighbors were his main social supports.  Two have submitted letters of support and are attached.  *See Letters of Ann*

*Granmaison and Gale Bowers.*

Sadly, due to his conviction in this matter, MacLeod was evicted in September 2019.  At the recommendation of his supervising probation officer, Tom Mullen, he secured a room in a sober house, ███████████████████.  This has proven to be a workable solution, at least on an interim basis, as the sober home offers a structured environment and is convenient to Mr. MacLeod's treatment providers.  While the loss of his housing was a major disruption to Mr. MacLeod's life, it is notable that he has maintained stability and sobriety in the midst of this stressor.

████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████ ▪ █████████
█████████████████████████████████████████████████
██████████████████████████████████████  His temporary sponsor, David Bowden, has also supplied a letter of support.  *See Letter of David Bowden.*

---

[2] In the presentence interview, MacLeod identified September 2017 as the approximate time period when he stopped drinking and began attending meetings.  However, some of the offense conduct clearly took place in October, November, and even December.  Undersigned counsel suggest that MacLeod may not be an accurate historian as to exactly when his drinking ceased completely.

3553(a) FACTORS

Under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2). The sentence must: 1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; 2) afford adequate deterrence to criminal conduct; 3) protect the public from further crimes of the defendant; and 4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2).  MacLeod contends that a probationary sentence, providing for supervision of his mental health conditions and sobriety, will satisfy the goals of sentencing.

MacLeod is a 48 year man with no adult criminal history and a well-documented array of serious medical and psychiatric conditions.  Certainly, given MacLeod's medical/psychiatric needs, a probationary sentence would promote him receiving needed medical care and treatment in the most effective manner.  The Bureau of Prisons (BOP) has faced persistent medical staffing challenges and some BOP institutions suffer vacancy rates of 40% or higher; in some instances, the already depleted medical staff is assigned guard duties and other security-related tasks drawing them away from medical duties. *See* Office of the Inspector General, U.S. DoJ, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges*, March 2016[3]; USA Today, *Nurses Thrust Into Guard Duty at Federal Prisons*, April 26, 2016.[4]  Moreover, the overt nature of MacLeod's CD and TD conditions would likely ostracize him and make him uniquely

---

[3] Available at https://oig.justice.gov/reports/2016/e1602.pdf
[4] Available at https://www.usatoday.com/story/news/nation/2016/04/26/nurses-federal-prisons-public-health-service-security/83517298/

vulnerable to harassment or worse.

MacLeod also suggests that the interests of specific deterrence and protecting the public from further crimes can be best served by closely monitoring MacLeod's sobriety and compliance with mental health treatment.  Since being placed on pretrial supervision, MacLeod has complied with all terms of release, demonstrating that he is amenable to supervision and will comply with conditions of probation set by the Court.  Lastly, MacLeod maintains that a probationary sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  Probation does not entail the absence of punishment.  As the Supreme Court noted in *Gall*, in upholding the sentencing court's imposition of probation on a defendant whose GSR was 30-37 months imprisonment, "offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."  552 U.S. 38, 48 (2007).

Moreover, MacLeod has already received a substantial collateral punishment for his conduct in the form of the loss of his subsidized housing, where he had lived for approximately two decades.  As several courts have recognized, collateral consequences of conviction are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (overruling prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," and "adequate deterrence"); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir.

2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution).

## **CONCLUSION**

For the foregoing reasons, MacLeod's asks the Court to consider his medical and psychiatric challenges, how they have affected the trajectory of his life, and conclude that they weigh in favor of a probationary sentence.  Such a sentence is "sufficient but not greater than necessary" to do justice in this case.  He asks the Court to impose no fine, as he lacks the means to pay one.

LIAM MACLEOD
By his attorney,


*/s/ Scott Lauer*
Scott Lauer
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061 (phone)
617-223-8080 (fax)
Scott_Lauer@fd.org

## CERTIFICATE OF SERVICE

I, Scott Lauer, hereby certify that this document and accompanying attachment was filed under seal via in-hand delivery and will be sent electronically to Assistant U.S. Attorney Jason Casey, as well as to Senior U.S. Probation Officer Jennifer Broquist by email, on October 10, 2019.

*/s/ Scott Lauer*
Scott Lauer